**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:25-CV-00080-HBB**

MERRY C.[1]                                                                                    PLAINTIFF

VS.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY[2]                            DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### I.     BACKGROUND

Before the Court is the Complaint (DN 1) of Merry C. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 12) and Defendant (DN 16) have submitted briefs in support of their positions.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 8).   By Order entered August 6, 2025 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

## II.    FINDINGS OF FACT

On April 17, 2023, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 522, 701-11).   Plaintiff alleged that she became disabled on March 23, 2023, as a result of neck and back injury from fall (Tr. 522, 569, 577, 585, 594, 734). The application was denied initially on September 22, 2023, and upon reconsideration on October 26, 2023 (Tr. 522, 611, 616, 622, 626).   On November 3, 2023, Plaintiff filed a written request for hearing (Tr. 522, 630-32).

On March 20, 2024, Administrative Law Judge Neil Morholt ("ALJ") conducted a telephonic hearing (Tr. 522).   Plaintiff and her counsel, Debra L. Broz, participated (*Id.*).   James B. Adams, an impartial vocational expert, testified during the hearing (*Id.*).

In a decision dated May 8, 2024, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 522-35).   The ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2028 (Tr. 524).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 23, 2023, the alleged onset date (*Id.*).   At the second step, the ALJ determined that Plaintiff has the following severe impairments:   degenerative disc disease of the cervical and thoracic spine, depression, and anxiety (*Id.*).   The ALJ also determined that Plaintiff has the following non-severe impairments:   hypertension, Gastroesophageal Reflux Disease ("GERD"), fatty liver, steatosis, diverticulitis, atypical chest pain, hyperlipidemia, diabetes, asthma, headaches, Factor V deficiency, mild bilateral sensorineural hearing loss, bilateral carpal tunnel syndrome or ulnar neuropathy, chemical injury to left eye, osteopenia in the lumbar spine and left hip, seborrheic keratosis, and intertrigo (Tr. 525-27).   Additionally, the ALJ

found that Plaintiff's purported rheumatoid arthritis and post concussive syndrome are not medically determinable impairments (Tr. 527-28). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 528-29).

At step four, the ALJ found that Plaintiff has the RFC to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) due to the limitations imposed by her mental impairments (Tr. 529). Specifically, Plaintiff can understand, remember, and carry out simple and detailed (but not complex) tasks and instructions for extended 2-hour periods before the need for a regularly scheduled break; she can occasionally interact with supervisors, coworkers, and the general public; and she can adapt to occasional changes in a routine work setting (*Id.*). Additionally, the ALJ determined that Plaintiff is unable to perform her past relevant work as a pharmacy technician, as actually or generally performed, because the demands of that work exceed her RFC (Tr. 534).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 534-35). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 23, 2023, through the date of the decision (Tr. 535).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 698-700). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

### III.   CONCLUSIONS OF LAW

#### A.   Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

**B.      The Commissioner's Sequential Evaluation Process**

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the RFC to return to his or her past relevant work?

5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Here, the ALJ denied Plaintiff's claim at the fifth step.

### C.      Challenge to part of Finding No. 3

The pertinent part of the ALJ's decision reads as follows:

The claimant had an audiological evaluation in June 2023.  Testing revealed a bilateral, mild, sensorineural hearing loss.   Her high intensity word recognition test scores were excellent bilaterally.  Her hearing sensitivity was below what was necessary for detecting some speech sounds at normal conversational levels. Binaural hearing aid use with directional microphones and Bluetooth were recommended.   In the claimant's July 2023 consultative physical exam, the examiner observed the claimant could hear, understand, and respond to normal conversational speech.   (Ex. 4F page 2; Ex. 12F)   The record does not demonstrate that the mild bilateral sensorineural hearing loss causes significant limitations in her ability to perform basic work activities and is not severe.

(Tr. 526) (citing Tr. 959, 1134).

#### 1.      *Arguments of the Parties*

Plaintiff asserts that the ALJ failed to note:

[T]he Clinical Audiologist also recommends that assistive listening devices such as a doorbell would be of benefit; that communication partners should face Ms. Crews when speaking to her to help facilitation speechreading; that visual cue use such as text, written instructions, diagrams, and checklist will improve communication intent; and that hearing protection should be utilized anytime Ms. Crews is exposed to dangerous noise levels . . .

(DN 12 PageID # 1180-81) (citing Tr. 1134).   Plaintiff contends "the impairment should be identified as severe" because "the limitations identified by the Clinical Audiologist pose more than a minimal impact to work activity" (*Id.* at PageID # 1181) (citing Tr. 524, 526).   Additionally, Plaintiff asserts limitations should be addressed in assessing her RFC (*Id.*).

Defendant contends the ALJ, in assessing whether the condition is "severe," reasonably considered the consultative examiner's observations that Plaintiff could hear, understand, and respond to normal conversational speech (DN 16 PageID # 1198) (citing Tr. 526, 959).   Further, Defendant asserts that the ALJ did not commit legal error by failing to list all of the Clinical

Audiologist's recommendations (*Id.*).   *See Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) ("And we don't require an ALJ to discuss every piece of evidence in the record. . . . We simply determine whether 'there is substantial evidence in the record to support th[e] conclusion.'") (*quoting Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

### 2.   *Applicable Law*

At the second step an ALJ determines whether a claimant suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).   To satisfy the "severe" requirement a claimant must demonstrate an impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work activities."   20 C.F.R. §§ 404.1522(a), 416.922(a).   The phrase "basic work activities" means "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1522(b), 416.922(b).   Examples of basis work activities include a claimant's "[c]apacities for seeing, hearing, and speaking[.]"   20 C.F.R. §§ 404.1522(b)(2), 416.922(b)(2).   An impairment can be considered non-severe "only if it is a slight abnormality that minimally affects work ability, regardless of age, education, and experience."   *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)).

### 3.   *Discussion*

The audiological evaluation report indicates Plaintiff presented for an audiological

evaluation on June 23, 2023 (Tr. 1133). "Pure Tone testing revealed a bilateral, *mild*, sensorineural hearing loss" (Tr. 1134) (emphasis added). Yet Plaintiff's High Intensity Word Recognition test scores were *excellent* bilaterally (*Id.*) (emphasis added). The Clinical Audiologist opined that "[Plaintiff's] hearing sensitivity is *below* what is necessary for detecting *some* speech sounds at normal conversational levels" (*Id.*) (emphasis added). Additionally, the Clinical Audiologist made seven recommendations, including "[b]inaural hearing aids with directional microphones and Bluetooth technology[;]" and utilize hearing protection when exposed to dangerous noise levels (*Id.*).

Plaintiff asserts that the ALJ failed to discuss all seven recommendations (DN 12 PageID # 1180-81). It is, however, well settled that an ALJ can consider all of the evidence without having to discuss every piece of evidence in the written decision. *See Showalter*, 2023 WL 2523304, at *3; *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006). Next, Plaintiff contends that "the limitations identified by the Clinical Audiologist pose more than minimal impact to work activity, and therefore, the impairment should be identified as severe" (*Id.* at PageID # 1181). But in making this contention, Plaintiff conflates the meanings of limitation and recommendation. The Clinical Audiologist expressed a limitation—mild sensorineural hearing loss bilaterally—that impacts Plaintiff's capacity for hearing. *See* 20 C.F.R. §§ 404.1522(b)(2), 416.922(b)(2). Relatedly, the Clinical Audiologist made recommendations (*e.g.*, binaural hearing aids) that are intended to mitigate the impact of the limitation on Plaintiff's capacity for hearing. This distinction is important in understanding the significance of certain findings made by the consultative physical examiner, Dr. Babi.

Just 36 days later, Dr. Babi performed a consultative physical examination on July 29, 2023 (Tr. 958).   In connection with the HEENT examination, Dr. Babi observed that Plaintiff "could hear, understand, and respond to normal conversation speech" (Tr. 959).[3]   Relying on Dr. Babi's observation, the ALJ found "[t]he record does not demonstrate that the mild bilateral sensorineural hearing loss causes significant limitations in [Plaintiff's] ability to perform basic work activities and is not severe" (Tr. 526).   The Court concludes that substantial evidence in the record supports the ALJ's findings at step two.

Additionally, the ALJ expressly indicated he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity" (Tr. 527).   As the ALJ found Plaintiff has several severe impairments, and considered the limitations imposed by her severe and non-severe impairments in assessing whether Plaintiff retained sufficient RFC to allow her to return to past relevant work and to do other jobs in the national economy, the ALJ's failure to find her hearing impairment is "severe" could not constitute reversible error.   *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

### D.    Challenges to RFC

Finding No. Five indicates that Plaintiff has the RFC to perform less than the full range of medium work, as defined in 20 C.F.R. 404.1567(c) and 416.967(c), due to limitations imposed by her depression and anxiety (Tr. 529).[4]   At issue are the ALJ's findings concerning limitations

---

3   HEENT   is   a   medical   acronym   standing   for   Head,   Eyes,   Ears,   Nose,   and   Throat. https://taylorandfrancis.com/knowledge/Medicine_and_healthcare/Miscellaneous/HEENT/

4  Specifically, the ALJ found due to her mental impairments, Plaintiff can understand, remember, and carry out simple and detailed (but not complex) tasks and instructions for extended two-hour periods before the need for a regularly scheduled break; can occasionally interact with supervisors, coworkers, and the general public; and can adapt to occasional changes in a routine work setting (Tr. 529).

imposed by Plaintiff's degenerative disc disease of the cervical and thoracic spine (DN 12 PageID # 1182-86).

In the discussion that follows Finding No. Five, the ALJ indicated "[i]maging supports the presence of medically determinable degenerative disc disease; however, there is no evidence of ongoing specialized treatment" (Tr. 531).   Specifically, the ALJ considered the January 19, 2023, x-ray of Plaintiff's thoracic spine that showed mild degenerative changes; the January 19, 2023, CT of Plaintiff's cervical spine that showed disc space narrowing and central stenosis suspected at C5-C6 and C6-C7; and the July 29, 2023, lumbar spine x-ray from the consultative examination that showed no significant loss of vertebral body height and disc height (*Id.*) (citing Ex. 7F at Tr. 1021-23, 1032, 1034; Ex. 4F at Tr. 960).   The ALJ also noted that the August 15, 2023, EMG "was suggestive of left nerve root pathology at or about the C6-C7 nerve root level but could also be indicative of general paraspinal muscle degeneration" (*Id.*) (citing Ex. 13F at Tr. 1138-44).

Next, the ALJ explained why the objective examinations of record did not support Plaintiff's subjective allegations about the severity of her physical symptoms and limitations (*Id.*) (citing Ex. 2F at Tr. 836, 844-45, 854, 857-58, 860; Ex. 7F at Tr. 1051-52, 1066, 1078-79; Ex. 9F at Tr. 1105-06; Ex. 11F at Tr. 1121, 1126).   Next, the ALJ explained why the consultative physical examination findings of Dr. Babi, on July 29, 2023, provided further support for the determination that Plaintiff has the capacity to perform medium exertional level activities (*Id.*) (citing Ex. 4F at Tr. 958-64).   Additionally, the ALJ explained why Plaintiff's reports demonstrate essentially normal activities of daily living (Tr. 532) (Ex. 4F at Tr. 958-64, Ex. 5 at Tr. 966-69, Ex. 11 at Tr. 1117).

The ALJ then addressed the medical opinions and prior administrative medical findings in the record (Tr. 532-33).   The ALJ concluded that the letter from Christopher Behringer, D.O., to Plaintiff's landlord—indicating Plaintiff would "probably be unable to work" for over a month—is not a medical opinion because it fails to offer any work-related limitations, is conclusive, and speculative (Tr. 532) (citing Ex. 2F at Tr. 858).   The ALJ explained that Dr. Babi's statement was not persuasive because the exertional and postural limitations are not well supported by the doctor's own examination findings (within normal limits) and appear to be based on Plaintiff's subjective complaints (Tr. 532-33).   The ALJ explained that the prior administrative medical findings of Drs. Christine Booth and Daniel Meece—indicating Plaintiff can perform work at the medium exertional level—are persuasive because they are well supported by the imaging and consultative exam findings cited above; and consistent with the conservative treatment received and the longitudinal exams of record that are largely unremarkable overall (Tr. 533).

### 1.    *Applicable Law*

The RFC findings are an ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   ALJs make these finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c).   Thus, in making the RFC findings an ALJ must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a).

11

The regulations for evaluating medical opinions and prior administrative medical findings explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[5] in the record, even if it comes from a treating medical source.    20 C.F.R. §§ 404.1520c(a), 416.920c(a).[6] Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.    20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).    The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.    20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[7]    Of these five factors, the two most important are supportability and consistency.    20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.    20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).    Notably, under the regulations ALJs "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.    20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which

---

5 At the initial and reconsideration levels, state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."    20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1).    ALJs "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.    20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

6 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

7 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.    20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), applies. First, an ALJ must "examine whether there is objective medical evidence of an underlying medical condition." *Id.*

Here, the ALJ determined there is objective medical evidence of degenerative disc disease of the cervical and thoracic spine (Tr. 524, 531). Therefore, the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, an ALJ may consider other information and factors which may be relevant to the degree of pain and other symptoms alleged (Tr. 530-34). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, a claimant's level of daily activity may be considered. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider household and social activities in evaluating complaints of disabling pain). Another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between [the plaintiff's] statements and the rest of the evidence . . ." 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

13

### 2.   *Discussion*

Plaintiff asserts that the ALJ's assessment of her physical RFC is not supported by substantial evidence (DN 12 PageID # 1183-86).   According to Plaintiff, the ALJ fails to recognize that three of the four items of diagnostic evidence he relied on in making findings about her degenerative disc disease were not considered by the state agency medical consultants (Drs. Christine Booth and Daniel Meece) and the consultative examiner (Dr. Babi) when they rendered their opinions (*Id.* at PageID # 1183).   Specifically, Plaintiff is alleging Drs. Booth, Meece and Babi did not have the opportunity to review the January 19, 2023, x-ray of Plaintiff's thoracic spine and CT of her cervical spine (Ex. 7F at Tr. 1021-23, 1032, 1034), and the August 15, 2023, EMG (Ex. 13F at Tr. 1138-44).   Plaintiff indicates this evidence was added to the record after the three doctors rendered their opinions.

The Court will begin by observing that the ALJ expressly indicated "[i]maging supports the presence of medically determinable degenerative disc disease" (Tr. 531).   As an EMG does not produce an image of internal structures like an x-ray or CT scan, it can reasonably be inferred that the ALJ is not referring to the August 15, 2023, EMG (Tr. 531).   Additionally, the Commissioner seems to concede, and the Court finds, that Drs. Booth, Meece and Babi did not have the opportunity to review the January 19, 2023, x-ray of Plaintiff's thoracic spine and CT of her cervical spine (DN 16 PageID # 1200-03) (*see* Ex. 7F at Tr. 1021-23, 1032, 1034).   But Drs. Booth, Meece and Babi did have the opportunity to consider the results of the July 29, 2023, lumbar spine x-ray that was taken in conjunction with Dr. Babi's consultative examination (*see* Tr. 570, 573, 578, 581, 586, 589, 595,598, 960).   Consequently, Drs. Booth, Meece and Babi did have the opportunity to review significant diagnostic evidence of degenerative disc disease in connection

14

with rendering their medical opinions.    Further, the ALJ appropriately considered the subsequently submitted imaging evidence—the January 19, 2023, x-ray of Plaintiff's thoracic spine and CT of her cervical spine—in assessing the persuasiveness of their opinions (Tr. 532-33). *See Sandidge v. Berryhill*, No. 4:18-cv-00166-HBB, 2019 WL 2567662, at \*5 (W.D. Ky. June 21, 2019).

Plaintiff next challenges the ALJ's finding that the objective exams of record do not support her allegations regarding her physical symptoms and limitations (DN 12 PageID # 1183-84).    More specifically, Plaintiff accuses the ALJ of failing to acknowledge specific comments in the Review of Systems and Physical Exam sections of a January 19, 2023, emergency room report, and in the Review of Systems section of an April 7, 2023, emergency room report (*Id.*) (citing Tr. 1019-20, 1039).    But Plaintiff's position is unavailing because the cited instances fall woefully short of demonstrating the ALJ's finding is not supported by substantial evidence of record. Equally important, Plaintiff is not supporting her position by citing the results of objective exams (*i.e.*, normal range of motion and strength) (*see* Tr. 1020, 1039).    Rather, Plaintiff is citing instances where her subjective complaints of pain are memorialized in each report (*see* Tr. 1019-20, 1039).    Consequently, Plaintiff's challenge is unavailing.

Next, Plaintiff cites what she believes are significant positive findings in physical therapy evaluations conducted on April 4, 2023, and July 12, 2023 (DN 12 PageID # 1184) (citing Tr. 476-77, 459-60).    Plaintiff submitted the records from TJ Samson Rehabilitation Services (dated April 4, 2023, to August 30, 2023) to the Appeals Council in support of her request for review of the ALJ's decision (Tr. 2, 458-83).    The Appeals Council found "this evidence does not show a reasonable probability that it would change the outcome of the decision" (Tr. 2).    As the Appeals

Council considered this new evidence, but declined review, the Court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993).   This approach makes sense because the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline*, 96 F.3d at 148; *Cotton*, 2 F.3d at 695-696.

The Court can, however, remand the case for further administrative proceedings in light of this new evidence, if Plaintiff demonstrates it is material and that there is good cause for failing to present it to the ALJ.   *Cline*, 96 F.3d at 148; *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 174-175 (6th Cir. 1994).   When the Court issues such a remand order, under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).   "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."   *Id.*

The Court will begin with the question of whether Plaintiff has demonstrated these physical therapy records are "new."   Plaintiff asserts they are new because they were not before the ALJ at the time of the decision (DN 12 PageID # 1186).   She explains that the "[p]hysical therapy records were not included with other evidence received from the TJ Health Pavilion Clinics and TJ Samson Hospital" (*Id.*).   The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding."[8]   *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *see Melkonyan*, 501 U.S. at 98

---

8 The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law.   *See, e.g.*, *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); *Foster v. Halter*, 279 F.3d 348,

(indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding).   As these records concern physical therapy evaluations performed on April 4, 2023, and July 12, 2023, they existed at the time of the administrative hearing on March 20, 2024.   Further, Plaintiff eventually obtained these physical therapy records from TJ Samson Rehabilitation Services (*see* DN 7 PageID # 23), not TJ Health Pavilion Clinics or TJ Samson Hospital.   Consequently, the physical therapy records were available to Plaintiff at the time of the administrative hearing if she had made a document request to TJ Samson Rehabilitation Services.

"Good cause" is demonstrated by showing "a reasonable justification for the *failure* to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (emphasis added).   Plaintiff asserts that good cause exists for the failure to present the physical therapy records to the ALJ because:   she testified about attending physical therapy during the administrative hearing; memory issues were key in her allegation of disability; and consideration of these records are necessary for a full and fair evaluation of the claims (DN 12 PageID # 1187) (citing Tr. 551, 748, 750, 756).   The Court notes that Plaintiff was represented by counsel prior to and during the administrative hearing (Tr. 522, 542-43, 602-09, 610).   At the outset of the hearing counsel indicated she had no objections to the exhibits and "the record is complete" (Tr. 544).   While Plaintiff mentioned receiving physical therapy for her neck in the summer of 2023 (Tr. 551-52), there is no indication that counsel asked the ALJ to keep the record open in order to submit the physical therapy records (Tr. 552-567).   Put simply, the failure to acquire and present the physical therapy records appears to be due to an oversight by counsel.   "Courts generally hold that an attorney's errors do not constitute 'good

357 (6th Cir. 2001).

cause'" for purposes of a remand under sentence six. *Thick v. Comm'r of Soc. Sec.*, No. 2:18-CV-10154, 2018 WL 6683348, at \*13 (E.D. Mich. Nov. 29, 2018) (survey of cases). As counsel's mistake does not constitute "good cause," the Court concludes that Plaintiff is not entitled to a prejudgment remand under sentence six.

Plaintiff takes issue with the ALJ finding the opinion of Dr. Babi not persuasive and the opinions of Drs. Booth and Meece persuasive (DN 12 PageID # 1185). The ALJ followed the applicable regulations when he identified substantial evidence of record supporting his findings that Dr. Babi's opinion was not well supported by his own consultative exam findings and appeared to instead be based upon Plaintiff's subjective complaints (Tr. 532-33). The ALJ also explained why he found Dr. Babi's opinion not consistent with the other evidence of record (Tr. 533). Additionally, the ALJ explained that the assessments of Drs. Booth and Meece were well supported by the imaging and consultative exam findings of record (*Id.*). The ALJ also found their opinions consistent with other evidence in the record including the conservative treatment Plaintiff received and the longitudinal exams of record that were largely unremarkable overall (*Id.*). As mentioned above, the ALJ appropriately considered the subsequently submitted imaging evidence—the January 19, 2023, x-ray of Plaintiff's thoracic spine and CT of her cervical spine—in assessing the persuasiveness of the medical opinions (Tr. 532-33). *See Sandidge*, 2019 WL 2567662, at \*5. Consequently, the ALJ's persuasiveness findings are supported by substantial evidence in the record and comport with applicable law. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

18

Considering the circumstances set forth above, there is no merit to Plaintiff's accusations that the ALJ made the physical RFC assessment without the benefit of a medical source statement, or he assigned functional limitations based on a layman's interpretation of raw medical data.

## IV.    CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation modified).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   *Id.*   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

## V.    ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

April 8, 2026

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:        Counsel

19